**Opinion issued August 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00002-CV

————————————

**SHAKEEL UDDIN, Appellant**

**V.**

**JACQUELINE K. CUNNINGHAM, DEPUTY RECEIVER OF SOUTHERN TITLE INSURANCE CORPORATION AND SOUTHERN TITLE INSURANCE CORPORATION, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-29600**

---

## MEMORANDUM OPINION ON REHEARING[1]

Appellant Shakeel Uddin guaranteed a loan made by Sterling Bank to Nabeel

& Amaan Investments, Inc. NAI used the loan to purchase real property. Following

---

[1] Appellant Shakeel Uddin moved for rehearing of our April 25, 2019 opinion. We deny the motion for rehearing, withdraw the April opinion and judgment, and issue this opinion and judgment in their stead. The disposition remains the same.

NAI's loan default and a superior lienholder's foreclosure on the property, Sterling filed a claim under the title-insurance policy it received from Appellee Southern Title Insurance Company. STIC, as Sterling's subrogee, sued Uddin and sought recovery, at least in part, based on Uddin's breach of his personal guaranty on the loan. After paying on Sterling's insurance claim and being assigned the rights under the guaranty, STIC amended its petition against Uddin to allege the assignment as a basis for recovery on its claim that Uddin breached the guaranty. STIC successfully moved for summary judgment over Uddin's arguments that the statute of limitations deprived STIC of standing or capacity, STIC failed to prove each element of its claim, and he had raised material issues of fact on his affirmative defenses. Uddin now appeals, raising the same arguments. We conclude that the statute of limitations did not implicate STIC's standing, any defect in STIC's capacity was cured by the relation-back doctrine, STIC established each element of its claim, and Uddin contractually waived his right to assert his other affirmative defenses. We therefore affirm.

## Background

NAI obtained a $1,400,000 loan from Sterling Bank on January 10, 2008, to finance its purchase of real property located in Houston. By the terms of the Promissory Note, NAI had five years to pay off the loan and granted Sterling a first lien on the property. That same day, NAI's president, Shakeel Uddin, signed a

Guaranty Agreement, promising Sterling that he would be responsible for NAI's obligations under the Note if NAI defaulted.

STIC, a Virginia corporation authorized to do business in Texas, issued an Owner's Policy to NAI and a Lender's Policy to Sterling.[2] Under the Owner's Policy, STIC insured NAI against loss caused by any lien on the sold property. Under the Lender's Policy, STIC insured Sterling against loss caused by any lien on the property that was superior to Sterling's lien. Unknown to STIC and Sterling, a superior credit interest existed: JLE Investors, Inc. had previously loaned money to NAI, and NAI had failed to pay on that loan, resulting in JLE's lien on the property that predated Sterling's lien.

Following NAI's failure to make several payments on the Note, Sterling sent a letter to NAI and Uddin on February 10, 2011, demanding full payment on the Note and the Guaranty Agreement. Neither NAI nor Uddin paid. Twelve days later, Sterling accelerated the Note. Sometime within the following month, Sterling discovered that JLE's lien was superior to its own and notified STIC. JLE foreclosed

---

[2] STIC issued these policies through one of its issuing agencies, American National Title. ANT's director was Uddin's business partner and fifty-percent co-owner of NAI, Syed Rizwan Mohiuddin. STIC filed a complaint in an adversary proceeding against Mohiuddin in United States Bankruptcy Court, seeking a determination that Mohiuddin was liable to STIC for his fraudulent issuance of eight title polices— including the two involved with this case. STIC was ultimately awarded a $8,497,832.62 nondischargeable judgment against Mohiuddin.

3

on the property in October 2011. The property was later sold during a trustee's sale. By this time, STIC was in serious financial trouble.

The State Corporation Commission of Virginia filed an application with the Circuit Court of the City of Richmond, seeking its appointment as STIC's receiver. In December 2011, the Virginia circuit court found that STIC was "in a hazardous financial condition such that any further transaction of its business will be hazardous to its insureds, policyholders, creditors, and the public." Accordingly, the Commission was appointed as STIC's receiver and was authorized "to proceed with the rehabilitation or liquidation of [STIC] and to take whatever steps . . . reasonably necessary . . . for the protection of [STIC's] insureds, policyholders, creditors, or the public."

On May 21, 2012, through its Virginia-appointed receiver, STIC filed its original petition against Uddin in Harris County District Court. STIC, being subrogated to Sterling's rights against third parties by the Lender's Policy's terms, sought payment from Uddin for the damages it would incur from its having to pay Sterling under the policy. STIC alleged that Uddin had signed the Guaranty Agreement with Sterling, and STIC stated that, "pursuant to the terms and provisions of the policy[,] [it] is subrogated to the rights Sterling [has] against third parties, most specifically in this instance, its rights against Dr. Uddin as a result of the JLE lien." STIC asserted a cause of action for breach of contract, alleging that Uddin

4

"has breached the terms of his agreements with Sterling and such breach has caused damages and legal costs," to which STIC was subrogated.

After Sterling formally filed its claim with STIC under the Lender's Policy in September 2012, the trial court granted an agreed plea in abatement that removed the case from the trial court's docket until Sterling's claim against STIC was "settled or resolved such that the exact amount of damages sought by [STIC could] be confirmed." In 2015, STIC's receiver issued a notice to Sterling that its claim had been determined. The notice asserted that Sterling was entitled to $710,000 under the Lender's Policy; however, because STIC was in receivership, that amount could not be paid immediately. STIC paid a portion of the total determination—$250,000—and continued its suit against Uddin.

Through a series of assignments that concluded in June 2016, Sterling's rights under the Note were assigned to STIC. And on August 30, 2016, STIC filed an amended petition against Uddin seeking full recovery under the Guaranty Agreement. In its live pleading, filed June 15, 2017, STIC continued to rely on the same facts and relationships among itself, Sterling, and Uddin that it had alleged in its original petition. STIC alleged that it had "the right to enforce and assert claims related to the Note, the Sterling Deed of Trust, the Guarantee Agreement, and the Loan Agreement (collectively, the 'Loan Documents')." STIC alleged that, after Sterling made its claim on the title policy, STIC "investigated the Property and the

5

JLE Deed of Trust and retained counsel to represent Sterling's interests," incurring investigative and legal fees and "thereby implicating [STIC's] right to subrogation."

In its live pleading, STIC further quoted the terms of the Lender's Policy and alleged that it had the right to "institute and prosecute any action or proceeding" that may be "necessary or desirable" to, among other things, "prevent or reduce loss or damage to the insured." It stated, "This lawsuit seeks to reduce loss or damage to Sterling by holding [Uddin] accountable for matters related to the Lender's Policy, specifically, the related Loan Documents." It further alleged, "Sterling contractually agreed to allow [STIC] to bring this lawsuit in the Lender's Policy. On March 4, 2016, [STIC] and Comerica Bank, successor in interest to Sterling Bank, *inter alia*, memorialized the details of this assignment." Based on these facts, STIC asserted that Uddin was liable for breach of the Guaranty Agreement.

STIC unsuccessfully moved for summary judgment numerous times, and Uddin repeatedly asserted a number of defenses, including the statute of limitations and certain counterclaims that he believed would entitle him to offset his liability to STIC.

In STIC's final attempt at summary judgment, it argued, among other things, that under Paragraph 11 of the Guaranty Agreement, Uddin waived all defenses, including his statute-of-limitations and other defenses that he asserted in an effort to obtain offsets against his alleged liabilities to STIC. STIC also contended that, even

6

if Uddin did not waive his statute-of-limitations defense, its claim under the Note was still timely. The trial court granted STIC's motion and ultimately signed a judgment requiring Uddin to pay $1,656,269.28, which consisted of the Note's remaining principal balance, interest, and various fees. Uddin unsuccessfully moved for a new trial and now appeals.

## Analysis

Uddin contends that the trial court improperly granted summary judgment because the statute of limitations deprived it of subject-matter jurisdiction; STIC did not cure its lack of capacity until after the statute of limitations expired; STIC failed to prove each breach-of-contract element; and Uddin raised fact issues on his other affirmative defenses.

## I.      Statute of limitations and its effect on STIC's capacity

Uddin contends that the trial court erred by granting summary judgment for STIC because he raised a fact issue on his statute-of-limitations defense. We review a trial court's rendition of summary judgment de novo, interpreting all summary-judgment evidence and making all reasonable inferences in favor of the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756–57 (Tex. 2007). To prevail on summary judgment, the movant must demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). Once the

7

movant makes this showing, the burden shifts to the nonmovant to show that there exists a genuine issue of material fact sufficient to preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A genuine issue of fact exists when reasonable and fair-minded jurors could differ in their conclusions in light of all summary-judgment evidence. *Goodyear Tire*, 236 S.W.3d at 755.

The statute of limitations for a breach-of-contract action is four years from the date of accrual. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A breach-of-contract claim accrues when, according to the language of the contract, facts that authorize the claimant to seek a judicial remedy come into existence. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017). Whether and when accrual occurs is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

The Guaranty Agreement provides, "In each event whenever any of the Obligations shall become due and remain unpaid . . . Guarantor will, on demand, pay the amount due thereon to Lender . . . ." On February 10, 2011, Sterling demanded payment of all past-due amounts no later than February 22, 2011. Uddin failed to make that payment, and Sterling accelerated the Note on February 22, 2011. Accordingly, Sterling's breach-of-contract claim on the Guaranty Agreement accrued in February 2011, meaning the statute of limitations expired in February 2015.

An assignee "takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor." *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, a claim otherwise barred by the applicable statute of limitations cannot be made viable by assignment. Uddin stresses that, by February 2015, STIC had not been assigned the rights under the Guaranty Agreement and that STIC first sued on the Guaranty Agreement in August 2016, well after the statute of limitations expired in February 2015. It follows, Uddin contends, that "[b]y the time STIC acquired Sterling's claim on the Guaranty Agreement through assignment in June 2016, limitations had already expired, and the claim was barred."

Relevant here, STIC argues that the relation-back doctrine applies and, thus, its claim against Uddin for breach of the Guaranty Agreement is not time-barred.[3] We agree that STIC's claim is not time barred.

The relation-back doctrine, codified in Civil Practice and Remedies Code section 16.068, states:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment

---

[3] In its motion for summary judgment and its reply to Uddin's motion for new trial, STIC argued that, under the Guaranty Agreement, Uddin waived all defenses, including his statute-of-limitations defense. *But see Godoy v. Wells Fargo Bank*, 575 S.W.3d 531, 538 (Tex. 2019) ("Blanket pre-dispute waivers of all statutes of limitations are unenforceable, but waivers of a particular limitations period for a defined and reasonable amount of time may be enforced."). We need not address this issue, however, because the relation-back doctrine obviates any potential limitations issue.

9

or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE § 16.068; *Lexington Ins. Co. v. Daybreak Expl., Inc.*, 393 S.W.3d 242, 244 (Tex. 2013).

In discussing the meaning of "transaction or occurrence" for purposes of the relation-back doctrine, the supreme court observed that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Lexington Ins. Co.*, 393 S.W.3d at 244 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). In determining whether an amended pleading relates back to an earlier filed pleading, courts look "for a common core of operative facts in the two pleadings" and "inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." *Id.* "Under § 16.068, it is permissible to allege new theories, facts or grounds of liability or defense in an amended pleading provided that such facts or theories are not wholly based on a new, distinct or different transaction or occurrence." *Pineda v. PMI Mortg. Ins. Co.*, 843 S.W.2d 660, 668 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied).

Here, all of STIC's pleadings, from its 2012 original petition through its 2017 amended petition, were based on the same "common core of operative facts." STIC's

10

original and amended pleadings all relied on the same relationships among the parties, alleging facts relevant to its issuance of the Lender's Policy, NAI's default and the foreclosure on the Property, Sterling's losses as a result of the title defects and claim under the Lender's Policy, and STIC's attempts to recover those losses by pursuing a breach-of-contract claim against Uddin as the personal guarantor on NAI's Promissory Note. Although the amended petition included a new fact and theory of liability—i.e., it reflects the 2016 assignment of the Guaranty Agreement from Sterling's successors-in-interest to STIC—it did not add new parties or allege facts or theories "wholly based on a new, distinct or different transaction or occurrence." *Id.* ("Although the petitions reflect additional or independent causes of action, the gravamen of the recovery sought by each remained constant and was based on money owed the insured lender by the Pinedas, the default on the note by the Pinedas, and the payment by PMI of a claim to the insured lender. These transactions or occurrences remained the cornerstone of each petition. But for the Pineda debt and default, there would have been no claim made by the lender, therefore no payment by PMI to the lender; and PMI would not have sought recovery from the Pinedas.").

Furthermore, STIC's 2012 original petition was sufficient to put Uddin on notice regarding the claims raised in STIC's amended pleadings. *See Lexington Ins. Co.*, 393 S.W.3d at 244. In its original petition, STIC alleged that it was Sterling's

11

subrogee and asserted a breach-of-contract claim against Uddin based on the Guaranty Agreement between Uddin and Sterling. In subsequent amended petitions, STIC continued to allege substantively similar facts—that it was Sterling's insurer and was entitled to enforce Sterling's rights against Uddin—in addition to including facts relevant to the subsequent assignment of the Guaranty Agreement to STIC. And it continued to allege a substantively identical breach-of-contract claim against Uddin based on the Guaranty Agreement. *See id.* STIC's amended petition, including the 2017 live pleading, related back to the cause of action alleged in the 2012 original petition, which was not subject to a plea of limitation when it was filed; therefore, the amended petition itself is, likewise, not subject to a plea of limitation. *See* TEX. CIV. PRAC. & REM. CODE § 16.068; *Lexington Ins. Co.*, 393 S.W.3d at 244; *see also Franks v. Sematech, Inc.*, 936 S.W.2d 959, 960–61 (Tex. 1997) (applying section 16.068 in context of workers' compensation subrogation provisions).

## II. Statute of limitations and its effect on STIC's standing

Uddin contends that the statute-of-limitations issue presents a standing problem, not a capacity problem curable by the relation-back doctrine. Standing is a component of a trial court's subject-matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). When a plaintiff lacks standing to bring a claim, the trial court is deprived of subject-matter jurisdiction

12

and the case must be dismissed. *See id.* Because standing implicates a trial court's subject-matter jurisdiction, we typically address standing arguments first. *See BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 479 (Tex. 2017). But because Uddin's standing argument requires an understanding of the relation-back doctrine discussed above, we address Uddin's standing argument here.

According to Uddin, when STIC filed its original subrogation action on May 21, 2012, it lacked standing to sue on the Guaranty Agreement because it had not yet been assigned the rights under the Note. Uddin maintains that because standing cannot be waived or cured by the relation-back doctrine, and because STIC was assigned Sterling's rights under the Note in June 2016—over a year after the statute of limitations expired—allowing STIC's August 30, 2016 amended petition to relate back to its original May 21, 2012 petition to cure its lack of standing was improper.

Uddin correctly states that standing cannot be waived or cured by the relation-back doctrine. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 164 (Tex. 2012); *Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626, 631 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Nevertheless, we reject Uddin's argument.

Sterling's claim under the Lender's Policy invoked STIC's contractual subrogation rights. That policy provides, in relevant part:

> The Company's right of subrogation against noninsured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds,

13

notwithstanding any terms or conditions contained in those instruments that provide for subrogation rights by reason of this policy.

Thus, STIC was subrogated to Sterling's rights and interest in the note securing NAI's indebtedness, including Sterling's rights under Uddin's Guaranty Agreement with Sterling.

Uddin's standing arguments ignore these subrogation rights. Subrogation allows a party who otherwise lacks standing to step into the shoes of and pursue the claims belonging to a party with standing. *See Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (holding same in context of equitable subrogation); *see also Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007) (noting that subrogation grants party seeking it "the right to pursue reimbursement from a third party"); *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex. 1968) (stating that insurer paying insured's loss becomes owner of insured's cause of action); *Bennett Truck Transp., LLC v. Williams Bros. Constr.*, 256 S.W.3d 730, 733 n.1 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[W]hen an insurer pays an owner's loss, it becomes the owner of the cause of action and therefore does not need an assignment.").[4]

---

[4] To the extent that Uddin argues that STIC lacked standing when it filed its original petition in 2012 because it had not fully paid Sterling's claim, we note that this argument is unavailing for several reasons. First, although STIC had not paid the claim, it had nevertheless incurred an interest in the matter because of its role as Sterling's insurer. *See Heckman v. Williams Cty.*, 369 S.W.3d 137, 155 (Tex. 2012) (holding that, for plaintiff to have standing, it must be personally injured in concrete

14

Furthermore, the four-year statute of limitations imposed on STIC's claims is not a jurisdictional requirement. Limitations is generally classified as an affirmative defense and is not jurisdictional in nature. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010). Absent some contrary expression of legislative intent, courts should follow this general rule and not construe an applicable statute of limitations as imposing a jurisdictional requirement that the claim be timely filed. *See id.* (citing for example TEX. GOV'T CODE § 311.034 (providing that "statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity")). Because nothing in section

and particularized way by conduct "fairly traceable" to defendant and redressable by its requested relief). Second, although there is a general rule "that a person who is subrogated to the rights or securities of another many not enforce the same until the claim of the latter against the debtor has been paid in full," *Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519 (Tex. 1969), the purpose of that rule is to protect the prior creditor (here, Sterling). *Id.* The rule does not exist to protect a party in Uddin's position, i.e., the third party liable for the injury to the prior creditor. *See id.* ("If the prior creditor consents to pro tanto subrogation of one who makes partial payment, . . . no one else is entitled to object."). Finally, the concern about whether STIC had paid Sterling's claim is more properly a question of STIC's capacity to sue on Sterling's behalf, not its standing. The parties agreed to an abatement following STIC's filing of its original petition so that the amount of damages under the policy could be determined. STIC's receiver determined that Sterling was entitled to payment under the terms of the Lender's Policy and paid a portion of the amount due while this litigation continued in an effort to recuperate some portion of the losses caused, in relevant part, by Uddin's failure to abide by the Guaranty Agreement. Therefore, at the time the trial court granted STIC's motion for summary judgment, Uddin's complaints regarding STIC's capacity to sue in place of Sterling had been cured. *See, e.g.*, *In re Bridgestone Am. Tire Operations, LLC*, 387 S.W.3d 840, 848 n.7 (Tex. App.—Beaumont 2012) (orig. proceeding) ("A defect in capacity is curable and after-acquired capacity will relate back to the inception of the suit.").

16.004 of the Texas Civil Practice and Remedies Code or related statutes suggest a legislative intent to impose a jurisdictional requirement, we hold that subsection 16.004(a)(3)'s four-year limitations period is not jurisdictional. Rather, it presents an issue of capacity, and deficient capacity can be cured by the relation-back doctrine. *See, e.g.*, *Intracare Hosp. North v. Campbell*, 222 S.W.3d 790, 796–97 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005)). Accordingly, we overrule Uddin's statute-of-limitations issues.

## III.   Contractual waiver of Uddin's defenses

Uddin contends that summary judgment was nevertheless improper because he raised material issues of fact relating to his defense of offset, which was based on alleged misrepresentation, conversion, negligence, breach of contract, breach of fiduciary duty, Insurance Code and DTPA violations, unjust enrichment, and equitable estoppel. STIC counters by arguing that Uddin waived these offset defenses under Paragraph 11 in the Guaranty Agreement.

STIC is correct. "The right of offset is an affirmative defense." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). In Paragraph 11, Uddin waived "all defenses given to sureties or guarantors." Accordingly, Uddin waived his offset defense and its underlying theories.

We are not swayed from our conclusion by Uddin's argument that Paragraph 11 waived only those defenses that are exclusively available to guarantors and sureties. We give a contract's language the plain and ordinary meaning it deserves. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 837 (Tex. 2018). Uddin reads Paragraph 11 as stating, "Guarantor waives . . . all defenses given *only* to sureties or guarantors at law or in equity . . . ." But that is not what it says. Under the contract, Uddin waived "all defenses given to sureties or guarantors." That the offset defense is not a defense exclusive to sureties or guarantors does not change the fact that it is a defense "given to sureties or guarantors."

Further, that Paragraph 11 goes on to specifically describe certain defenses as being waived does not suggest, as Uddin contends, that the parties were limiting the waiver to those defenses available only to sureties or guarantors. Paragraph 11 states that the "Guarantor waives . . . all defenses given to sureties or guarantors at law or in equity other than actual payment of the indebtedness and performance of the actions constituting the Obligations, *including, but not limited to*, any rights pursuant to Rule 31 of the Texas Rules of Civil Procedure [and other enumerated defenses]." (Emphasis added). Although Paragraph 11 specifically identifies some defenses and not others, the list, by the Guaranty's plain language, is illustrative and not exclusive. *See, e.g.*, *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 19 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that list prefaced with phrase

"including but not limited to" provided nonexclusive examples of covered disputes). The language of Paragraph 11 is not conclusive proof that the parties intended to waive defenses available *only* to sureties and guarantors, as Uddin contends; rather, the language confirms the parties' intent, as expressed in Paragraph 16 of the Guaranty Agreement, to draft a contract that "compl[ied] with usury and all other laws relating to this Guaranty." Accordingly, we overrule Uddin's issues regarding his other affirmative defenses.

## IV. Conclusively establishing each element of breach of contract

Uddin contends that summary judgment was improperly granted because STIC failed to conclusively prove each element of its breach-of-contract claim. A plaintiff seeking to enforce a note must establish that the note exists, it is the owner or holder of the note, and "a certain balance is due and owning on the note." *Leavings v. Mills*, 175 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Uddin argues that STIC offered no evidence establishing as a matter of law that $1,656,269.28 was the amount owed under the Guarantee Agreement.

STIC's summary-judgment evidence included the Note, Uddin's guaranty of the Note, the assignment of the Note to STIC, and a "payoff statement" that was part of Sterling's business records. Each document was described either by the affidavit of John Cox, a STIC receiver, or Mary Hensley, a records custodian for Sterling. To establish the amount owed under the Guaranty Agreement, STIC largely relied on

18

the "payoff statement" attached to Hensley's affidavit. Generally, a "payoff statement" is a "statement of the amount of . . . the unpaid balance of a loan secured by a mortgage, including principal, interest, and other charges properly assessed under the loan documentation of the mortgage . . . and . . . interest on a per diem basis for the unpaid balance." TEX. PROP. CODE § 12.017(a)(5).

The "payoff statement" provides that a principal balance of $1,082,525.55 was due and owing on September 15, 2016. It also lists as due and owing by that same date interest in the amount of $541,690.99, late fees in the amount of $10,075.41, and other fees in the amount of $21,977.33. It then lists the total "payoff" as $1,656,269.28, which is the cumulative amount of the principal balance, interest, and fees. The trial court's judgment ordered Uddin to pay STIC $1,656,269.28. Uddin contends, however, that there are numerous inconsistencies and unexplained numbers in this "payoff statement" that make it incapable of conclusively establishing the amount owed. We disagree.

Uddin contends that the payoff statement does not conclusively demonstrate that it describes the Note, pointing out that the payment statement reads, "GUARANTEE : NO," "ORG EFF DATE: [November 14, 2011.]," and "ORIG LN AMOUNT: 1,332,525.55. He maintains that because this lawsuit is based on the Note that he guaranteed for $1,400,000 and that was executed on January 10, 2008, these three discrepancies raise the reasonable possibility that the payoff statement

addresses some other loan. But Uddin swore in an affidavit that Sterling extended only one loan to NAI, and the payoff statement lists the loan as being provided to "NABELL AMAAN IN." Further, November 14, 2011 is the same date the trial court signed an order of nonsuit dismissing Sterling's claim against NAI for collection on the Note without prejudice. Additionally, the Note required NAI to pay off the entire loan balance within five years, and the payoff statement lists the "MAT DATE" as January 10, 2013, exactly five years after the Note was executed. Last, under the heading "PAYMENT INFO," the payoff statement lists "1,400,000" as the "PAYOFF AMOUNT." This amount is the amount listed in the Note, the Guaranty Agreement, the Purchaser's and Seller's Statements, and Uddin's affidavit. The discrepancies that Uddin identifies in the payoff statement are negated by reference to the other summary-judgment evidence and therefore do not raise a genuine issue of material fact. The trial court properly determined that STIC conclusively established $1,656,269.28 as the amount due and owing under the Note. We therefore overrule Uddin's last issue.

**Conclusion**

The trial court's judgment is affirmed.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

20